ance may be demanded of the mortgagee. Case v. Boughton, 11 Wend. 107. And a plea that on the sale of a chattel the vendor took a mortgage of it, and on the mortgage becoming forfeited took possession of the chattel to dispose of it, and that he might have disposed of it, and out of the avails retained the amount due, was held a good answer to a suit to recover the price of the chattel. But independently of the authorities it would seem plain that the mortgagee of a perishable chattel like a ship or a horse, can have no right to retain it for an indefinite period after condition broken, and when the property has diminished in value by use or age sell it and demand of the mortgagor payment of the deficiency. The value of the vessel at the time the mortgagee took possession appears to have been about $20,000. I think the bankrupt is entitled to a credit for that amount from June 14, 1870, when the mortgage debt was declared due.

3. The trust deeds given by the bankrupt were for the security of moneys then loaned to him and for future advances. After executing the deeds the bankrupt declared a homestead on one of the lots conveyed him in trust. He subsequently obtained further advances without disclosing the fact that he had declared a homestead on the premises. He now claims that his homestead should be protected against any charge under the trust deeds for advances subsequent to its declaration. It is unnecessary to inquire whether a person who has conveyed the legal title of his land to a trustee as security for a debt has any estate on which, under the laws of this state, a homestead can be declared, for it is clear that as against the trustee or cestui que trust the attempted fraud of the bankrupt cannot succeed. The validity of a mortgage to secure future advances is indisputable, and the mortgagee will be protected in making such advances as have been made without notice of an intervening security.

In some of the states the registry of the second mortgage is deemed full notice to the first mortgagee. 17 Ohio, 371; 2 Barr [2 Pa. St.] 96; 9 Barr [9 Pa. St.] 86. But the American courts generally, and the English courts uniformly, hold that nothing short of actual notice will suffice. "It must be," says Mr. Chief Justice Marshall, "actual notice brought home to the party." Shirrass v. Craig, 7 Cranch [11 U. S.] 34; Truscott v. King, 6 Barb. 346; Stuyvesant v. Hall, 2 Barb. Ch. 159. And see [Article on "Mortgages"] 2 Am. Law Reg. U. S. 19 et seq.

If, then, the question were presented as between the cestui que trust under the trust deed and a subsequent incumbrancer the former would be protected for any advances made without notice of the intervening incumbrance. The mortgagor who has declared a homestead, and fraudulently obtains further advances, cannot stand in a better position than an intervening incumbrancer.

An order of reference to the register must be entered to compute the amount due the petitioners on the principles declared in this opinion. On the ascertainment of the amount the premises will be ordered to be sold and the proceeds applied to the satisfaction of the debt due to the petitioners.

---

HAARFAGER, The HAROLD. See Case No. 6,083.

---

## Case No. 5,884.

### In re HAAS et al.

[8 N. B. R. 189.] [1]

District Court, S. D. New York. 1876.

BANKRUPTCY—IMPROPER MEANS TO SECURE APPOINTMENT AS ASSIGNEE.

Where B, to secure his election as assignee in bankruptcy, agreed with two of the creditors that he would pay their claims in full if they would give him their powers of attorney, the court disregarded his election and appointed the official assignee.

[In bankruptcy. In the matter of Haas and Samson.]

By the Register:

I, Isaiah T. Williams, the register of this court in bankruptcy in charge of the above entitled matter, do hereby certify that B—— received a majority in number and amount of the votes of creditors who have proved their claims at the meeting for the election of an assignee, in the above entitled matter, held before me on the 6th day of May, 1873, and I hereby decline to approve of and confirm the choice of the said B—— as assignee of the said estate, and in submitting to the district judge the question of the approval of such choice, do hereby certify, pursuant to the rule of this court adopted in Re Bliss [Case No. 1,543], that, in my opinion, such choice should not be approved of by this district judge, for the following reasons:

At the said meeting of creditors the vote of the White Star Line (a creditor to the amount of thirty-two dollars and forty-nine cents) was offered by the said B—— for himself, under a power of attorney for said creditors, to vote at said meeting for assignee, which vote was challenged by Mr. Hazeltine, who appeared for other creditors, and to sustain such challenge called said B—— as a witness, who was sworn and testified: "I hold the power of attorney of the White Star Line to vote at this meeting. Q. Under what circumstances did you procure this power? A. I asked Mr. Sparks to allow me to receive it and to vote upon it as I was the largest creditor and wanted to vote on it; I might have told him that as it was a small amount I would pay it in full." On his cross-examination he said: "I did not promise to pay this out of the bankrupts' estate;

---

[1] [Reprinted by permission.]

I offered it as a consideration to Mr. Sparks, for proving so small a claim."

The vote of Williams & Guion was also offered by the said B——, and challenged by Mr. Hazeltine on the part of other creditors, and the same witness gave the same testimony concerning that claim, to wit: that he had agreed with Williams & Guion to pay the whole of their claim if they would give him a power of attorney to vote at the meeting for the election of an assignee.

I am of opinion that such efforts to procure the election of oneself assignee are improper as tending to injure the wholesome operations of the bankrupt law [of 1867 (14 Stat. 517)]. I therefore recommend the appointment of the official assignee as assignee in this matter.

BLATCHFORD, District Judge. The recommendation of the register is approved.

---

## Case No. 5,885.

HAAS et al. v. ARTHUR.

[14 Blatchf. 346.][1]

Circuit Court, S. D. New York.  Nov. 12, 1877.

CUSTOMS DUTIES—ENTRY AND APPRAISAL.

1. H., on the entry of merchandise at the custom house, added 18 per cent. to the market value, as stated in the invoice, with a protest, stating that he made the addition to prevent a seizure, and that the real value was the original invoice value. On like merchandise entered before by H., on like invoices, 18 per cent. had, on appraisal, been added to the invoice value, and the goods had been seized for forfeiture. In a suit brought by H. to recover back the duties paid on the added 18 per cent.: *Held*, that the action could not be maintained.

2. After the addition by H. of the 18 per cent., the value of the goods, for duty, could not be fixed, by appraisal, at a less sum than that arrived at by such addition.

[This was an action by Simeon Haas and others against Chester A. Arthur, collector of the port of New York.]

Stephen G. Clarke, for plaintiffs.

Henry E. Tremain, Asst. Dist. Atty., for defendant.

WALLACE, District Judge. The plaintiffs, upon the entry of certain merchandise, added eighteen per cent. to the market value as stated in the invoice, accompanying the act by a protest, in which they stated that they added the eighteen per cent. to the invoice value under compulsion, to prevent a seizure of the merchandise, and that the real value was correctly set forth originally in the invoice. Similar merchandise had theretofore been entered by the plaintiffs upon similar invoices, and upon appraisal, eighteen per cent. had been added, and the merchandise had thereupon been seized for forfeiture; and their object was to avoid such a result

in the present entry. They now seek to recover from the defendant, the collector, the duty assessed upon the additional eighteen per cent.

The action cannot be maintained. Upon the entry of their merchandise, one of two courses was open to the plaintiffs. If they believed the market value of the merchandise to be correctly stated in the invoice, they could have relied upon this belief, and, in case it was fixed at a higher value, upon appraisement, could have had redress by an appeal from the appraisal. If they were unwilling to adopt this course, fearing the contingency of an appraisal which might fix the value of the merchandise at a sum so much greater than the invoice value, as to subject them to an action for penal duty or forfeiture, they had the right to add to the invoice value such sum as they should deem advisable, in which event there could not legally be an appraisal for a less value. No other course was open to the plaintiffs. Instead of selecting the former they selected the latter, and thereby put it beyond the power of the appraisers to fix a lower value than that on which the duties were collected. The plaintiffs could not qualify the effect of their act in adding to the value in the invoice, by assigning the reasons which induced them so to do. Having fixed the value at a sum below which there could not be an appraisal, they cannot be heard to complain of the result, and are liable to pay the duties assessed. Judgment is ordered for the defendant.

---

## Case No. 5,885a.

HABEMAN et al. v. WHITMAN.

[5 Ban. & A. 530.][1]

Circuit Court, E. D. New York.  July, 1880.

PATENTS—INFRINGEMENT—NEW ARRANGEMENT OF OLD PARTS.

The complainants' patent, which claimed a method of arranging old parts to produce a new and useful result: *Held*, not to be infringed by the defendant's different arrangement of such parts, whereby he accomplished a different and better result.

[This was a bill in equity by Frederick Habeman and others against Samuel Whitman for the alleged infringement of reissued letters patent No. 3,438, granted to plaintiffs, May 18, 1869. The original patent, No. 62,-807, was granted to Bardell and Smith, March 12, 1867.]

A. J. Todd, for complainants.

Robert Payne, for defendant.

BENEDICT, District Judge. This action is brought to recover damages for the infringement by the defendant of a reissued patent granted to the plaintiffs on the 18th

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]